FILED
JEANNE A. NAUGHTON, CLERK
MAY 15 2017
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
MITCHELL H. COHEN U.S. COURTHOUSE
401 Market Street
P.O. BOX 2067
CAMDEN, NJ 08101-2067**

Andrew B. Altenburg, Jr.  (856) 361-2320
U.S. BANKRUPTCY JUDGE

May 15, 2017

## MEMORANDUM DECISION - NOT FOR PUBLICATION

| | | |
|---|---|---|
| Bradford W. Irelan, Esq. | Samuel M. Silver, Esq. | Stephen C Thayer |
| 440 Louisiana, Suite 1800 | 2050 Route Twenty-Seven | 1074 Buckingham Drive |
| Houston, TX 77002 | Suite 106 | West Deptford, NJ 08086 |
| | North Brunswick, NJ 08902 | |

RE: **Financial Casualty & Surety Company v. Stephen C. Thayer et al.
Adv. Pro. No. 14-1584-ABA**

Dear Messrs. Irelan, Silver, and Thayer:

Pursuant to the opinion issued by the District Court in *Fin. Cas. & Sur. Co Inc. v. Thayer*, 559 B.R. 102 (D.N.J. 2016) (the "Opinion"), the following constitutes the court's findings of facts and conclusions of law.

The District Court directed the following in the Opinion:

> Specifically relating to Thayer, a precise accounting must be performed to determine the total amount of Thayer's nondischargeable debt to FCS. The amount of the nondischargeable debt is the amount of the bail bond forfeiture judgments ($165,000.00[1]) and the premium debt ($11,299.30 in premium payments and $6,399.00 in unreported bail bond powers of attorney, totaling $17,698.30). According to the bankruptcy court's calculation, that debt, however, has been reduced by several events. FCS applied Thayer's build-up fund to the outstanding forfeitures with three disbursements: $15,500, $32,584.14, and $.18. FCS also received a fifty-two percent remission of Weston Smith's $150,000.00 bond and the New Jersey state court ordered the return of $78,000.00 to FCS. Thus, it appears that of the $182,698.30 of nondischargeable debt, $126,084.32 has been paid to FCS, leaving $56,613.98 in debt that is exempted from discharge. A more thorough accounting must be performed to set the precise nondischargeable debt Thayer owes to FCS. The same specific itemization must be performed for the attorneys'

---

[1] The District Court incorrectly recited $165,000 in its opinion. FCS in its Designation of Accounting correctly recited $165,500 as the original amount of the judgment.

Page 1 of 8

fees and costs related to Thayer's nondischargeable debt under § 523(a)(4). We leave such matters to the bankruptcy court upon remand.

*Thayer*, 559 B.R. at 123

Following the issuance of the Opinion, the court conducted a status conference at which both parties appeared. At this status conference, Financial Casualty & Surety Company ("FCS"), was instructed to provide an accounting of its fees and costs by December 16, 2016 and Stephen C. Thayer ("Thayer"), an unrepresented individual, was to submit a response by January 6, 2017. Thereafter, FCS could file a supplemental reply by January 13, 2017. After its deadline expired, FCS submitted its 146-page Plaintiff's Designation of Accounting (Doc. No. 60) on December 19, 2017, setting forth the amount due under the bond obligation after setoffs, and further seeking fees and costs in the amount of $69,216.91.

Because that document contained improper time designations, could not be read, and apparently failed to comply with the Opinion, the court issued correspondence to FCS instructing it to file the corrected billing records and supplemental affirmation on the docket (Doc. No. 61). Thayer would have seven days to respond. In response to the court's directive, on January 31, 2017, FCS submitted a 52-page supplemental accounting (the "Accounting") (Doc. No. 62) reducing it fees to the amount of $47,133.20. On February 15, 2017, Thayer objected to the Accounting (Doc. No. 63). On March 9, 2017, FCS filed a reply to Thayer's objection (Doc. No. 64). FCS objected, in part, to the untimeliness of Thayer's objection.[2] On March 23, 2017, Thayer filed a reply to FCS's reply (Doc. No. 65). The matter is now ripe for consideration.

### 1.    Bond Obligation

Upon review of the original accounting filed by FCS, (Doc. No.60), the court specifically directed FCS to, *inter alia*:

> explain why, contrary to the District Court's opinion, you did not reduce the bail bond forfeiture judgment by the $15,500 and $0.18 disbursements from the build-up fund (you included the $32,584.14 only). *See* 559 B.R. at 123.

Doc. No. 61. In response and supported by detailed exhibits, FCS explained, without contest, that the $15,500 had been applied to bond forfeiture liabilities that it either had waived or did not pursue in this proceeding. Thus it withdrew only $32,584.14 and $.18 from Thayer's BUF account to

---

[2] The court finds that FCS is estopped from and/or has waived its right to object to the untimeliness of the objection. First, FCS did not timely file its original accounting. The accounting was due December 16. It was filed December 19 (the court has no record of granting an extension of time). Second, if following the original scheduling initially set by the court, FCS would have had one week to reply to Thayer's response (which was actually timely under the original scheduling order because it was within 3 weeks of FCS's submission). Instead, FCS waited over three weeks to respond. Finally, the Third Circuit has instructed that it prefers matters to be disposed of on the merits whenever practicable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984); *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984). Considering all the submissions of the parties will assist this court in deciding the matter on merits and, given that the submissions are merely untimely and not prejudicial, it is practicable to do so.

credit the Weston Smith bond forfeiture judgment. *See* Doc. 62, Ex. A. It also explained that it was only pursuing the Weston Smith bond forfeiture, in the amount of $150,000.[3] Finally, FCS demonstrated $78,000 was remitted to FCS by the State of New Jersey and Atlantic County, New Jersey for and credited to the Weston Smith bond. *See* Doc. 62, Ex. B. FCS states that there are no other offsets or credits for the bail bond premium claims made by FCS against Thayer. Thayer produced no evidence to contradict the accounting of FCS, and the court is satisfied with these explanations.

Thayer also argues that he is entitled to an additional offset $11,299.30 in unpaid premium bail bond powers because he is already paying this to Bail Group Management (BGM), a party not a party to this litigation but rather a separate litigation. FCS argues that the court cannot consider this argument because it goes "beyond the scope of an appellate court's remand," citing *Davis v. Alabama Dept. of Ed.*, 1990 WL 150083 (N.D. Ala., S.D. June 28, 1990). *See also Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 n. 2 (11th Cir.1984) ("[o]n remand district court is not free to deviate from appellate court's mandate"). The lower court may consult the appellate court's opinion to ascertain the intent of the mandate. *City of Cleveland, Ohio v. Federal Power Comm'n*, 561 F.2d 344,346 (D.C. Cir. 1977). This court disagrees with FCS's reasoning. The district court's opinion in this matter mandated that "[a] more thorough accounting must be performed to set the precise nondischargeable debt." *Thayer*, 559 B.R. at 123. Certainly, any viable offsets are part of a more thorough accounting and must be considered to determine the precise nondischargeable debt.

Nevertheless, through the evidence submitted, the court is not convinced that Thayer is entitled to any further offset. First, while the evidence submitted supports that BGM was awarded a judgment in the amount of $23,752, Thayer failed to demonstrate how the evidence supports his theory. Simply put, Thayer does not connect the dots with his submissions to demonstrate that any portion of that judgment was earmarked for or specifically related to FCS. Second, as the court understands it, FCS was not a party to that lawsuit nor was BGM a party to this lawsuit. Therefore, the earlier judgment has no binding effect on FCS. *See Taylor v. Sturgell*, 553 U.S. 880, 893, (2008). In short, Thayer has not effectively demonstrated that he is entitled to offset the $11,299.30 against the bond obligation.

As a result, upon consideration of the evidence and arguments submitted by both parties, the court concludes that Thayer remains obligated to FCS under his bond obligations in the amount of $17,698.30 for unpaid premium bail bond powers and $39,415.68 for the remaining bond forfeiture judgment under the Weston Smith bond for a total bond obligation owed to FCS by Thayer in the amount of **$57,113.98**.

---

[3] Indeed, Thayer acknowledges that $150,000 was the amount of the forfeiture related the Weston Smith Bond. *See* Doc. No. 63, p.8.

2.  **Attorneys Fees and Costs**

As set forth in the Opinion, the District Court determined that FCS is entitled to recover attorney fees and costs. In *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164, 192 L. Ed. 2d 208 (2015), the Supreme Court noted that "[o]ur basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise". The American Rule applies to fee-shifting in federal courts. *Choi v. ABF Freight Sys., Inc.*, 14-7458, 2015 WL 8758846, at *2 (D.N.J. Dec. 14, 2015) ("Our legal system generally adheres to the 'American Rule,' under which each party bears its own litigation expenses, including attorneys' fees, regardless of whether it wins or loses. *See Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011). Departure from the 'American Rule' is only appropriate when there is express authorization in a statute, court rule, or contract. *Fin. Cas. & Sur., Inc. v. Bonino*, No. 11-4316, 2015 WL 3754549, at *2 (D.N.J. June 16, 2015)."). Here, **and as argued by FCS in its Motion for Summary Judgment**, Thayer agreed by contract to "indemnify and hold harmless for 100% of all reasonable costs, expenses, and liabilities that [FCS] may sustain or incur in connection with [his] performance of [his] bail bond business and the subject matter of this Agreement." Doc. No. 1, Sub-Producer Bail Bond Agreement, ¶ 17(c).

The district court cited *In re Grigg*, 619 Fed. Appx. 195, 199 (3d Cir. 2015), to find that FCS was entitled to its attorneys' fees and costs associated with the bankruptcy proceedings as "ancillary obligations." While *Grigg* involved only prepetition fees, other courts have held that postpetition attorneys' fees are recoverable if incurred to collect a nondischargeable obligation. *See In re Foster*, 38 B.R. 639, 641 (Bankr. M.D. Tenn. 1984) ("attorneys' fees are recoverable if specifically provided for by contract, note or other written arrangement"); *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) ("Ancillary obligations such as attorneys' fees and interest may attach to the primary debt;") (citing *In re Hunter,* 771 F.2d 1126, 1131 (8th Cir. 1985)); *In re Borgus*, 544 B.R. 315, 325 (Bankr. E.D.N.C. 2016) ("'When a debt evidenced by a note or other contract allowing attorneys' fees and other costs of collection is determined nondischargeable, the attendant attorneys' fees and costs are similarly nondischargeable.'") (quoting *Foster*, 38 B.R. 639, 642). Accordingly, FCS may recover all its fees and costs associated with Thayer himself because they are specifically provided for by the written agreement between the parties.

It having been determined that FCS is entitled to recovery of its legal fees and costs pursuant to its contract with Thayer, the question raised is what standard this court must apply when reviewing those fees and costs. The court concludes that FCS's fees must be reviewed under the reasonableness standard. *In re Foster*, 38 B.R. 639 (Bankr. M.D. Tenn. 1984), *In re Borgus*, 544 B.R. 315, 325 (Bankr. E.D.N.C. 2016). This reasonableness standard is undeniably consistent throughout the Bankruptcy Code wherever a bankruptcy court is called upon to determine fees. *See* 11 U.S.C. § 330(a)(1)(A) (professional's compensation must be reasonable); 11 U.S.C. § 506(b) (an over secured creditor's professional's fees must be reasonable); and 11 U.S.C. § 523(d) (a debtor's attorney's fees for successfully defending a nondischargeability action must be reasonable).

The reasonableness requirement in fee determinations stems from trying to prevent overreaching professionals, creditors from bullying debtors, and/or excessively cautious or

overzealous advocacy. *See In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 844 (3d Cir. 1994) (purpose behind the reasonableness standard of § 330 is for the bankruptcy court to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors); *Matter of Swenby*, 529 B.R. 705, 710 (Bankr. W.D. Wis. 2015); *In re Wanechek*, 349 B.R. 836, 843 (Bankr. E.D. Wash. 2006) ("The reasonableness requirement in Section 506(b) was intended to prevent creditors from 'fail[ing] to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts.' *In re Gwyn*, 150 B.R. [150] at 156 [(Bankr. M.D.N.C. 1993)]"); *In re Talarico*, 234 B.R. 182, 184 (Bankr. M.D. Fla. 1999) ( "The purpose behind Section 523(d) is to 'discourage creditors from initiating meritless actions'"); *In re Conant*, 464 B.R. 511, 518 (Bankr. D. Mass.) (the purpose behind the reasonableness standard of § 523(d) is to avoid ill-conceived or spurious actions), *aff'd sub nom. FIA Card Servs., N.A. v. Conant*, 476 B.R. 675 (D. Mass. 2012); *In re Pusateri*, 432 B.R. 181, 207 (Bankr. W.D.N.C. 2010) (overzealous attorney work warranted a reduction of attorney fee allowed under section 523(d)).

As to FCS's fees in this case, the court will apply a reasonableness standard gleaned from case law and Bankruptcy Code sections. For example, under section 330(a), the court may award "reasonable compensation for actual, necessary services rendered" by the attorney and by other professionals "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." *Busy Beaver*, 19 F.3d 833, 840. Likewise, in *In re Wanechek*, 349 B.R. 836, 842–43 (Bankr. E.D. Wash. 2006), the court applied a similar non-exclusive factor test to determine the reasonableness of fees requested by a creditor under section 506. Much the same, in *In re Borgus*, 544 B.R. 315, 325 (Bankr. E.D.N.C. 2016), the court applied a non-exclusive factors to determine the reasonableness of fees requested by a creditor under section 523. What is more, under 523(d), "[r]easonable attorney's fees should be judged by what the fee would be if a seasoned lawyer had done the work." *In re Shahidulla*, 465 B.R. 511, 517 (Bankr. D. Minn. 2012). Finally, "the court shall not allow compensation for [*inter alia*] (i) unnecessary duplication of services. . . ." 11 U.S.C. § 330(a)(4)(A).

With these factors in mind, the court must conduct an objective inquiry based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances. *In re Fleming Companies, Inc.*, 304 B.R. 85, 89-90 (Bankr. D. Del. 2003). A "judge's experience with fee petitions and his or her expert judgment pertaining to appropriate billing practices, founded on an understanding of the legal profession, will be the starting point for any analysis." *Id.* (citing *Busy Beaver*, 19 F.3d at 854). The court should then consider any evidence submitted with the application or at a hearing. *Id.* The court is not required to make a line-by-line analysis of the fee application and a sampling will suffice. *In re Maruko Inc.*, 160 B.R. 633, 642 645 (Bankr. S.D. Cal. 1993) (citing *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D. Mass. 1992)); *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir. 1976). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver*, 19 F.3d 833 at 844-45. Finally, a fee applicant's failure to exercise billing judgment, excessive time, and unnecessary duplication of effort will result in reduction of fees where, in the sound discretion of bankruptcy court, such fees are unreasonable. *In re Maxine's, Inc.*, 304 B.R. 245 (Bankr. D. Md. 2003).

In its latest submission, FCS seeks recovery of $37,346.09[4] in reasonable and necessary attorney's fees and expenses. Thayer makes several objections for the denial of fees, but those objections are either misplaced, unfounded, unwarranted or moot as a result of the self corrections made by FCS. For example, FCS asserts in its supplemental submission in response to the court's inquiry, Doc. No. 62,[5] that the revised fees include only those entries for fees which are non-dischargeable, consistent with the district court's ruling. In fact, FCS reduced its fees from $69,216.91 down to $47,133.20. In light of this, Thayer's argument that FCS is asserting a claim for fees outside the district court's ruling is unsubstantiated. Moreover, the argument that the fees should be disallowed in their entirety has no merit in this case because, as set forth below, they do not rise to the level of excessiveness, outrageousness or unreasonableness exhibited in the cases cited by Thayer in his objections. (Doc. No. 63, p.3). The court also does not find any statements made by counsel to FCS in the submissions rises to a level warranting a denial of fees. Finally, Thayer agreed by contract to indemnify and hold harmless for 100% of all reasonable costs, expenses, and liabilities that FCS may sustain or incur in connection with his performance of his bail bond business. Just because the courts ultimately did not decide all the issues pursued by FCS does not mean that FCS is not entitled to fees and costs in pursuing those matters, because Thayer remained responsible for all reasonable fees and costs under his agreement with FCS. Thus, pursuant to the district court's mandate, this court must determine if the fees and costs of FCS were reasonable.

As set forth above, the court must conduct an objective inquiry as to the reasonableness of fees guided by its own experiences and considering any evidence submitted with the application. FCS has submitted Ex. B to Doc. No. 63 ("Fee Request") for consideration. Except for fees requested in connection with a default judgment, which FCS withdrew its request for, Thayer has not specifically identified any line items in the Fee Request that are particularly objectionable. Nevertheless, the court has some concerns particularly in the area of administrative, duplicative, or excessive services. The court "always looks to reasonableness and operates by the guidelines that normal secretarial, paralegal, or junior attorney services should be compensated accordingly—for example, simple correspondence, including filing letters, scheduling of meetings, etc., preparation of basic documents such as notices of motion, subpoenas, etc., and routine document review—should be compensated at a lower hourly rate, if compensated at all." *In re McDermott*, No. 05-17387(DHS), 2009 WL 2905375, at *7 (Bankr. D.N.J. Aug. 24, 2009). *See also Busy Beaver*, 19 F.3d 833; *Jefsaba, Inc.*, 172 B.R. 786, 800 (Bankr. E.D. Pa. 1994); *In re Auto. Warranty Corp.*, 138 B.R. 72, 78-79 (Bankr. D. Colo. 1991); *In re Larson*, 346 B.R. 693, 701 (Bankr. E.D. Va. 2006); *In re Adelson*, 239 B.R. 627, 629 (Bankr. S.D. Fla. 1999); *In re Moreno*, 295 B.R. 402, 405 (Bankr. S.D. Fla. 2003); *In re GSC Grp., Inc.*, No. 10-14653 AJG, 2012 WL 676409, at *7 (Bankr. S.D.N.Y. Feb. 29, 2012); *In re Green River Coal Co., Inc.*, 163 B.R. 103, 104-05 (Bankr. W.D. Ky. 1994); *In re Worldwide Direct, Inc.*, 316 B.R. 637 (Bankr. D. Del. 2004); *In re Parrilla*, 530 B.R. 1, 20 (Bankr. D.P.R. 2015).

---

[4] FCS has reduced its fee request two times since its original request from $69,216.91, in part directly in response to the concerns raised by the court or specific objections made by Thayer.

[5] Filed before Thayer's objections.

Upon review of the Fee Request, it is clear that FCS utilized the services of professional paralegals. However, the court believes that some of the time expended on behalf of attorneys, sometimes even at the highest hourly rate, could have been performed by paralegals.[6] There also seemed to be excessive time spent on routine pleadings such as *pro hac vice* pleadings and scheduling orders and letters to the court as well as calendaring. Time is charged for an unrelated case.[7] Time is charged for items solely related to Nicole Thayer, who was dismissed by FCS from this case. It also appears that the entire appeal was charged at the highest hourly rate with no attempt to utilize a professional at a lower rate resulting in one instance, significant time spent on the routine or administrative task of cite checking a brief.[8] In other instances, it appears that travel time is lumped in with service time.[9] It is customary in New Jersey that such travel is compensated at 50 percent of the normal hourly rate. *In re McDermott*, No. 05-17387(DHS), 2009 WL 2905375, at *8 (Bankr. D.N.J. Aug. 24, 2009).

It does not appear from the pleadings submitted that FCS policed its Fee Request. A fee applicant must exercise billing judgment, and failure to do so will result in reduction of fees where, in the sound discretion of bankruptcy court, such fees are unreasonable. *Maxine's, Inc.*, 304 B.R. 245 (Bankr. D. Md. 2003). It appears to the court that FCS exercised billing judgment only after the court directed it to do so and then again after Thayer pointed out an issue in his objection. For the reasons set forth above, as well as based upon its own experiences, the court finds that portions of the Fee Request are improper, duplicative, unreasonable and/or unnecessary, if not excessive, and reduction of the Fee Request is warranted. The court has pointed out some examples of improper charges. The court is not required to undertake a line-by-line analysis to determine what exact fees must be excluded or adjusted. *Maruko Inc.*, 160 B.R. at 642 645. "If a court determines some of the time claimed by a party should be excluded, it may also use a percentage deduction as a practical means of trimming fat from a fee application." *In re Nicholas*, 496 B.R. 69, 76 (Bankr. E.D.N.Y. 2011). *See also McDermott*, 2009 WL 2905375, at *7 (reducing time for administrative tasks by 20 percent and then allowing an hourly rate of $100 for that time); *In re Old Summit Mfg., LLC*, 323 B.R. 154, 163 (Bankr. M.D. Pa. 2004) (firm sanctioned in the amount of 50 percent of its fees earned postpetition); *In re Automobile Warranty Corp.*, 138 B.R. 72, 77 (Bankr. D. Colo. 1991) (applying a 10 percent reduction to the total amount of fees); *In re Maruko Inc.*, 160 B.R. 633 (Bankr. S.D. Cal. 1993) (applying a 25 percent reduction to time billed).

Here, improper, excessive, unwarranted and/or unnecessary services and the failure to exercise billing judgment warrants a reduction of the Fee Request by $4,460.07 (approximately 12 percent). The total fees and costs allowed are: **$32,886.02.**

---

[6] As one example, correspondence to court regarding appeal notice at highest hourly rate. Ex. B, p. 30.

[7] For example, Rondeau bankruptcy case. Ex. B, p. 4.

[8] 1.7 hours was spent by a professional at the highest rate on cite checking a brief. Ex. B, p. 35.

[9] For example, Ex. B, pp. 20-21.

## CONCLUSION

For the reasons set forth above, the grand total of the amount due from Thayer to FCS is **$90,000.00** ($57,113.98 for the bond obligation + $32,886.02 for attorneys' fees and costs). Consistent with the District Court's Opinion, this debt is nondischargeable.

The court reserves the right to further supplement its findings of fact and conclusions of law.

An appropriate judgment has been entered consistent with this decision and is enclosed.

/s/ Andrew. B. Altenburg, Jr.
United States Bankruptcy Judge